Good morning, Your Honors. My name is Jim Lopesens. I represent Pastor Miller and the church. I'd like to reserve seven minutes for rebuttal, and I'd like to begin by discussing a common theme that runs through all of the legal claims that we have raised, and that for something before you get your relief or before you are allowed to exercise your religious freedom. Factually, the problem with delay is extreme in this case because the law that Burien passed making it illegal to live in Burien on public property was passed on September 25th, effective November 1st. So there were 36 days to act after the law took effect for the homeless to leave if they couldn't find a private place to live, and hosting began on November 7th. The other thing that's emergent about time here and not having to suffer waiting for the city to make a decision is that winter is coming, and winter kills unhoused people. They die of hypothermia, and it's November. So if the city had said, we're going to wait and ask for your permission to do this no matter how long it takes, it could take months. It could take months for them to issue a decision. How do we know it would take months? We don't, but it could. But that's just speculation, and as we see in the facts here, the Burien is letting them stay there and just saying, would you apply for a permit? They don't kick them out. They just say, would you please apply for a permit? And your client just says, no, we're not going to do it. Not now, not ever. I don't think, though, that all the case law says that just because it might get granted later is not a reason why you have to apply. But your argument is we should hold against the city because your people would be delayed in allowing the people onto the parking lot. But they've not been delayed. The record shows that they're allowed to be there pending the application being filed. If I'm right, Your Honor, what you're saying is maybe they would have granted the permit. Maybe they would have granted it. No, what I'm saying is in response to your question about delay, there's no showing here that the city of Burien is going to say you can't have these people unless you have the permit. They're saying we understand the people are there. We want you to apply for a permit. They never applied for a permit, but the city of Burien never actually went and cleared them out. They just let them stay there. So it seems to me that what you're saying is speculative and, at least on the records, probably wrong. What I'm saying, Your Honor, is that I don't have to make that showing. No church has to make that showing that the case law says you don't have to apply in order to challenge these types of licensing schemes. I'm saying that Watchtower Bible people didn't apply. The people in the Second Circuit at the Presbyterian Church, they didn't apply. The people within this Circuit didn't apply, and the district courts have said you don't need to apply, you don't need to apply, you don't need to apply. You don't need to wait to see what they will do. In fact, the burden, they need to have a statute which guarantees prompt judicial decision making. Judicial or administrative? Administrative has to be judicial in the Littleton case. That was exactly the argument made in Littleton. Littleton said, actually what Littleton said is all we need to show is that there's prompt access to a court. It's not a prompt judicial determination. That just can't be right. So you're saying that you could make a facial challenge to any law that doesn't have a timeline on making a decision? That's what the prior straight law, all the precedents say, that's all. There's six U.S. Supreme Court cases that say you do not have to apply. And there are cases where this court has said you win. This is a prior restraint, even though you didn't apply. Well, then you have to prove this is a prior restraint law then. Yes, we have to prove it's a prior restraint law. And how does that fit then with the spirit of Aloha Temple, which talk about facial challenges? And where is the expressive conduct here? Well, maybe I could say two things about the Aloha case, Your Honor. First, I think the answer, one answer to your question is that in Aloha, the court said you can make both facial and as challenges. And I think that's the case where they said you win on facial challenge. So we don't even have to bother addressing as applied challenge. Most of the cases I've cited, I think the churches win on a facial challenge. Sorry, what was the other point you were making? Oh, about expression. That's the central point made in spirit of Aloha, isn't it related to expression? Right. That is one of the points that yes, central point made there. And I think the district court assumed that unless you can shoehorn this into expression and speech and free speech, that you just can't apply the prior restraint doctrine. It just doesn't apply. And the U.S. Supreme Court has said that's wrong and that the prior restraint doctrine applies to free exercise of religion at least three times. And yeah, I mean, assuming they agree, but how does this even show? How is it express exercise of religion? Yes. Yes. This is the statute. The statute, the regulation, the statute, I'm not sure I understand the statute says, among other things, it says. Religious facilities are allowed in this zone. It says that it's that's a permitted use. And if you are a religious facility, well, then they define religious facility as a facility where there's a primary thing going on is worship. Taking the stranger in, taking the unhoused in is worship. Several courts have said that. Well, they've said that you have to. Sorry. The question is, what's the meaning of the code? Not some generic free floating definition. So the question is whether or not this fits as religious facility within the meaning of the code. Correct. That's one question, but I don't believe it's the only question, Your Honor. I mean, in other words. But that's my question. It's my question to you. How does this fit within the definition of religious facility within the code? Well, it's worship and several how setting up homeless encampment is worship. It is, when people have no place to live and they're poor and disadvantaged and they're going to freeze and you take the stranger in when that's a central tenet of your religion, which it has been in Christianity for 2000 years and is in all major Abrahamic religions. Taking the stranger in is religious worship, and it's central to all three Abrahamic religion. I take that point. And I think under some definitions, that's absolutely right. My question is whether or not that's the definition employed by the Berrien Municipal Code. And I'm not sure you're right as to that. Well, my answer to that is twofold. OK, I mean, the Berrien Code says it's a religious facility. It's OK here. How do we define religious facility? It's a facility that's primarily devoted to worship or an accessory use. If you conclude that it this isn't that that's not the end of the ballgame because facial examination of the statute is not the only way, whether you see it's it's a prior restraint. The first sorry, not the first, the Second Circuit in the practically identical case, the Fifth Avenue Presbyterian case said they did the exact same thing. The church said unhoused people can sleep on our property at night. And New York City said you can't do that unless you get a license to run a shelter facility. And they didn't apply and they was a violation of pre-exercise and they won. In fact, I think they they got a preliminary injunction, I think, because they were likely to cancel. I agree with much of what you're saying. But as I understand, you're not challenging the religious use of regulation. You're challenging the temporary use permit regulation. That's what you're saying is a prior prior restraint. Yes. And so regardless. So you have to prove why that regulation is is expressive. I don't think so. Is it has a close relation to expression? Why not? Unless are you make did you make it? Let me ask you this. Did you make an as applied challenge? Both? Yes. You are making an as applied both. OK, because as I think what you're saying is as applied makes a lot of sense. But on the facial side, I don't see it because I see you're challenging the temporary use regulation, not the religious permitting regulation. Well, if I'm not sure if this is it goes to what you're saying or not here, but I just want to point out that we have always took the position that your code allows us to do this without applying for a temporary use permit. Your code says this is OK. We don't even need to apply. It says we only need to apply if it's an unpermitted use. We wrote them and said, this is a permitted use. OK, so you are challenging the religious use regulation. You're saying that it's challenging. What I'm saying is you are not applying your own code. Honestly, you are being dishonest about your own code. Your own code says we don't have to apply for this permit. And in fact, at the end of the day, I mean, when when when either the encampment was over or almost over and there's an exchange of communications about would you enter into a memorandum of understanding, which we did enter into and which we signed the one that they proposed, we were saying we were saying, what about all these fines that you imposed on the pastor? And they said, and this is in the record, right? This is in our complaint. Oh, don't worry about the fines. The primary reason we those fines was to provoke you into taking an appeal, an administrative appeal, which, by the way, would lengthen the administrative process before there was a final decision, which doesn't even get to there being a final judicial decision, which could take over a year. And I've cited many cases. But they said the reason they wanted to provoke an appeal administratively to themselves, to their own administrative hearing officer, was so they could get the guidance of the administrative hearing officer as to whether their interpretation of their code was correct. So in this case, and I don't agree with you, your honor, that speculation matters. I don't have to prove that they would have denied a permit. But you actually have in this case evidence that they intended to delay things. They intended to provoke an administrative appeal, which could take months and months and that is why people like Justice Gorsuch, in a concurring opinion, I think, in one of the COVID cases, the Roman Catholic case, he said that the court was rejecting, properly rejecting the argument that let's give the courts below more time. The church can always come back later if need be. But my point is, yes, this was going to take time. But in the meantime, on the ground, as a de facto matter, the encampment was permitted. And that's how it goes. And that's how it goes. And that's how we want it to go the next time. But your argument, well, wait a minute, they can't drag this out and not allow us to do this. No, it is being dragged out. But meantime, you're allowed to do what you want to do. They can't tell us, if you do this again, we're going to fine you again. They can't tell you that we might make, we might prosecute you criminally. They have scared off all the other churches in this town. I mean, this church put out a call to the other churches and said, why don't you stand by us? And they saw what happened to this church, and nobody else stepped forward. We want to do this every two years. We said we want to do this every two years. They said, if you enter into an agreement with us about how this should operate, that will cure your violations. We actually did sign their agreement that they proposed, and it would govern all the future ones. We wanted to do this every two years. Now it's been about two and a half years since we've done it. I mean, if we're allowed to do it without this threat of massive fines, and we do it in the winter of 26, 27, it'll be three years since we've done it. But have you applied for another permit? We will never apply for a permit unless they get around this, unless they fix everything. And I don't think they're going to fix everything. I mean, we said, you said to us, one of the ways you can cure this is to enter into an agreement. Do these things. Make sure it's not noisy. Don't serve liquor. We agreed to all those things. Don't have registered sex offenders. There were no problems with this. The only thing we won't do is say, could we have your permission, please? We gave them every piece of information they asked for. Their application only asks three questions. Do you need more electricity? Will there be a problem with egress on public roads? And do you serve liquor? And that's it. And we said, no, no, no. We gave them everything their application asks for. The only thing we didn't do is say, now, mother, may I please do this? Because that would give them the opportunity to stretch it out for months, for years. And we do not have to prove that. So counsel, can you clarify? So you're saying your facial challenge is to the code 19.10.450, the religious facility regulation, not to the temporary use regulation? No, it's the temporary use regulation doesn't have things in it. I mean, it doesn't have time limits. That's one thing. And what it does. Well, just answer my question. What's the facial challenge to? Which regulation? The facial challenge, I think, is to the temporary use permit law that says you have to prove this and this and this and this and doesn't say we have to make a decision in any amount of time. OK, so you're not challenging facially the religious facility regulation? No, we think that supports us. We think we are a religious facility and we fit your definition of religious facility. And you won't explain to us why we don't permit fit your definition. And yet, so you're asking us to do something your own code says we don't have to do. I'm not challenging it. I'm saying you are ignoring your own code. I get my problem is to get through a facial prior restraint challenge. You have to show why the temporary use regulation then is closely related to expression. I think it's a hard thing to do. If you're challenging the religious facility regulation, then it's much easier. Well, let me say something about closely related to expression. First of all, in Aloha or Oregon Barter, or perhaps both, I think both this court said religion, exercise of religion is commonly associated with freedom of expression. Yeah, I understand that. So boom. But I just want to know which regulation are you facially challenging? Certainly we're challenging the temporary use permit law. OK, that's OK. Go ahead. Go ahead. Well, you know, if they decided they wanted to set up a Friday night beer hall and jazz festival under the temporary use law, would you argue, well, that's related to expression also? Probably not. That would be a stretch for fitting within the mass gathering kind of line of case law from Oregon Barter. But if you're just going to drink beer, I don't think that would be a stretch. I don't know. On the other hand, the Oregon Bartering case says there's going to be lots and lots of hippies here at a back to the land festival and there's going to be a lot of opportunity for expression. But I wouldn't be here. This church wouldn't be here. But then how are you making a facial challenge to that? Their law says you have to prove to us that this fits in, is compatible with the area. Their law says you have to prove to us that this does not create any dangers or problems. Their law says you have to prove it's not materially detrimental to the public welfare. Their law doesn't say, and we will get you, we will ensure prompt judicial decision making decision within a very short period of time. So it's a priority. Mr. Lobson, is the bottom line really that even if they could impose certain kinds of restrictions, your objection is you can never be assured of a speedy answer? Is that the bottom line of your complaint? That's one of them. Yes. And it runs through the substantial burden one where you recognize that delay is a substantial burden and it runs through the prior restraint law. If I could, I don't want to sit down before I touch on the pre-exercise claim, which doesn't. Sorry, before. Yeah. And can you show me where you made an as-applied challenge? It's pled in the complaint, I think. Okay. I'm pretty sure that. Well, we took you over. Why don't you? But I would like to just say one thing about the pre-exercise claim, which doesn't depend on any of this prior restraint stuff. Right. And that is a law which has exceptions in it is not a law of general application, period. That was made very clear in the Fulton case recently. A lot of courts had to recognize that some of their prior precedents were now not good law anymore in light of Fulton. This law makes let's Christmas tree lots operate without applying for this thing. Let's carnivals and amusements and it lets you put a mobile home on the place for a year as long as you're building something else on the place that you intend to live in it. This law has exceptions, so it's not generally applicable under Fulton. It cannot be considered generally applicable. That triggers strict scrutiny. They have to have a compelling governmental interest and they have to have a narrowly tailored explanation as to why it applies here and the burdens on them. It's not that I have to prove on behalf of the church that it won't cause a fire or it won't do this or it won't do that. The burdens on them. And it's just like they said in Roman Catholic. And why are you letting hair salons and bars be open for this, but not churches and worship services? Why are you letting amusement rides and carnivals and time for rebuttal? Yes, thanks. Good morning. Excuse me. Good morning, Your Honors. I may please the court. Holly Lynch on behalf of the city of Burien. Before I get into the specific claims, there's some key points and concepts that I think are important. This is a land use case about land use and zoning codes. It is not a case involving a permit that was denied or religious conduct that was stymied or didn't go forward. It's not about licenses. It's not about short term events. It's not about, you know, a two day change to how somebody is using their property. It is about taking a parking lot and turning it into dwelling space, outdoor dwelling space for close to 100 people. And keep in mind that these people are some of the most vulnerable in our populations. And the mechanism for allowing that to happen, because it is a change in use, parking to dwelling, is through a permitting process. It is not through a letter from an attorney. It is not through back and forth phone calls. It's a permitting process. And that's the mechanism that we have. So let me ask you this. Do we have any assurance that had the permit been applied for, it would have been granted? Certainly. I think that if you look at the permit application itself, which we submitted in the in our supplemental record, it says, you know, permit needs to be applied for 30 days ahead of time. The city interprets that to mean you're going to get your permit within the 30 days. No, no, it doesn't say that. That implies you're going to get an answer within 30 days. Oh, yes. Pardon me. You are correct, Your Honor. And what the city had represented to the church all along. We encourage this. Thank you. We just need to make sure that this is safe. And and I think you can also infer from the undisputed facts, you know, they waived the permitting fee. They actually had directly reached out to the church themselves saying, hey, we need to set this up. I mean, that doesn't happen in a typical permitting process. Yeah. And so and so what are the requirements for the permitting for this particular use? That is a basically access sewage, that kind of stuff. Yeah. And if you look at the it again, because it's a generally neutral, neutrally applied process, it's it's a review by the building department, the fire department, the planning department, police. And yes, it's all of those health and safety factors that the city pointed out and described to them. And we need to make sure that there's sanitation, there's no fire hazards, that this is generally safe. And the way to do that is through this review. And so when they refuse, again, the city is trying to find alternative means to move this forward. And so. So help me understand, your adversary is telling me that they agreed to all of these things. Is that right? Yes and no. They agreed to all of them finally, but after the encampment had ended at its natural end date. So at that point it was moved. But but they agreeing to all the things that would be in the permitting process if they were to apply again? I believe so. I don't want to I don't want to speak to a hypothetical circumstance in the future. I but. But they agreed to things that would have been applied, would have been required had they filed for the permit beforehand. They agreed to things that they negotiated through a memorandum of understanding, which was entered into under Washington law regarding religious institutions hosting homeless encampments. And so the terms of that were reflected from the statute. Those were not necessarily going to be conditions of granting the permit. But was it coextensive? No. Was their agreement in effect include the conditions that would be included in a permit application? Well, I think that we're dealing with a hypothetical here because there was no permit application. There was a negotiation and this is what. No, I understand there wasn't. But you just ticked off a series of items that would need to be in an application. So my question is, is the agreement that was reached tantamount to a permit application or even a grant of a permit application because this is now a permitted use? I think that it's an apples to oranges analysis somewhat because the memorandum of understanding is a. Is an agreement and therefore it doesn't go through that typical permitting process. The permitting process that the city described was very much of we would like to just come in and have the fire department come with us need to make sure that there's water sanitation, no fire hazards. When they contemplated a memorandum of understanding that exceeds the boundaries of a permit because this temporary use permit was contemplated for 90 days and a memorandum of understanding. Potentially could have been applied to future happenings. It's a different scenario. It doesn't quite get to my question and that is the key points of a temporary use permit as you laid them out relate to basically safety and health. Correct. And are those in fact part and parcel of the memorandum of understanding? So the memorandum in effect would be tantamount to a permit and then a granting of a permit? Yes, your honor. I believe if I'm understanding your question correctly. Yes, the memorandum of understanding addresses health and safety and so under Washington state law this is an alternative to the permitting process. So they don't need a permit if they're operating under the memorandum of understanding? Correct, under Washington state law. So if I answered your question, I just want to get. I guess I'm trying to figure out what the beef is at this point. I mean when asked of course Mr. Lipson says we will never apply for a permit because we don't need to. But what you're now saying is what's happened is tantamount to a permit. But for now everything is copacetic. Is that right? The memorandum of understanding was ultimately not executed because the encampment ended. It certainly could be revived in the future if the situation arises again. But I do want to get into a little bit the claims here specifically because I think that it's important to address these facts within the actual claims that have been pled. And the first one is the free exercise clause claim of course. And as this court said in San Jose Christian College, a law and many other courts have said you know zoning laws that are neutral and are applied uniformly to everybody that don't target religion, that don't ask about a religious purpose, are not violations of the free exercise clause even if they affect incidentally a religious practice. So a law is neutral and generally applicable and I'm reading here I'm quoting from the San Jose Christian College case. If it does not aim upon or resist or excuse me restrict practices because of their religious motivation and does not in a selective manner impose burdens only on conduct motivated by religious belief. So of course we know in the San Jose Christian College case a religious institution wanted to a zoning exemption permit to build a religious college and the city denied it. And this court said well you know these are neutral generally applied laws anybody who wants to build in a zone that doesn't allow for it has to apply for a permit. This is not looking into the use, this is not looking into the religious motivation behind it. And as Berion you know said over and over like anybody who wants to convert a parking lot into a dwelling outside for over a hundred people has to apply for a permit. It doesn't matter what the underlying purpose is or not, we're not looking at that. We believe you that this is a sincerely held religious belief but that's not relevant to our process and in fact they can't look into that. You know the permit application itself is short, it does not consider the religious or the secular reasons behind it. It simply looks at the change in use, again parking to living. And oh go ahead. So can I ask do you think that they made an as-applied challenge on the free exercise, I'm sorry free speech claim? No I do not believe that they made an as-applied challenge on the free speech claim because to get there there would have had to have been some curtailment of the religious practice. And Cantwell versus Connecticut which they say is the case that must be relied on, says that when a law does not involve a religious test or does not obstruct or delay, it is not subject to any constitutional objection and is not a prior restraint. Well I mean here if they made an as-applied challenge they are saying that you've determined that their ancillary use or accessory use is not religious and that is a religious test. No what we're saying is is that there was a change in use at the property. Well not well that's because you're just denying that their religious purpose is not an ancillary use. No it's more specific than that. It is taking the parking lot which is part of the original permitted property, how it's how it was built 20 some years ago and turning that that use into a dwelling. Yes but if they're saying that that's an ancillary use then it then you know as part of you know then of their religious purpose that fits within the regulation. Right but it is a it is a change and and the temporary. Well it doesn't say you need to do anything it changes if you're within the within the use of the within the permit. Use is not otherwise permitted in the zone so if if it is a religious purpose to use the parking lot then it's not a change that requires a temporary use permit. I believe that the the code says accessory use. Yeah sorry. Which does not contemplate dwelling and. Well I mean that's a religious determination though isn't it or it could be. What's accessory to the religious practice that is a quintessential religious question. Sure but but again it's it's going back to how this property was originally zoned and it's yes the the church the the dwelling but zoning is not just hey here's our building it's there's a site plan etc you know there's there's laws regarding. But you would agree if that's a case though it could infringe on on the exercise or at least implicate the the first amendment. That code provision? Yeah determining that something is not a related as accessory use in the religious context can implicate a first amendment. Well and that's why it's it's done neutrally here and that's why the city says we're not looking at at a at your your religious intent we take you for your word this is you're changing a parking lot to to a place for 100 plus people to live for three months outside. Yeah yeah. But they're saying that actually is in the confines or under the umbrella of how we view Christianity and our duty to help these people. So it's no different whether it's inside the church or it's in the parking lot. Well and so certainly and it would be then similar to requiring a religious organization to apply for a building permit to build a temple. Nobody can deny that a temple is is for a religious use and a religious purpose. But say they use the parking lot for a blood drive. Do you think they need a permit for that? Well if they used it for for 90 days continuously sure because it's changing the use from a parking lot to a different use. But it's in this and you would agree that's a related accessory use. No I would agree that they would need a permit because it would be a change in use. So what if they were to use it for a children's camp? A children's Christian bible camp for 100 days of the summer. Again that would be a change in use and so under the it would be changing the parking lot from now if they. But that's not what the regulations say. It's saying you could use it you only need the temporary use permit unless it's otherwise permitted and if it is permitted use to use the parking lot for a religious purpose then the temporary use permit is not necessary. I think the city's position was that a parking lot isn't inherently a religious purpose. Here's a sort of a call it a meta question. All three of us or all four of us are struggling to figure out what's a related accessory use. I mean that's in the code. I've got a different question which is who gets to decide that question? Does the does Burien get to decide that because it's their code? Do we get decided independently what the meaning of their code is? I mean I can see arguments either way. This either this may or may not be a related accessory use within the meaning of the code. Maybe it is maybe it isn't. Do we get to decide that? Does the city get to decide that in the first instance? Do we have to give some deference to them as to the meaning of their own code? I mean who gets to decide that? Not what is the meaning but who gets to decide what is the meaning? Certainly but there is not a challenge to that definition and that use. Well no the question is what is the meaning? I mean what is the definition? I don't have it in front of me. No I've got the words in front of me but then the question is what does that definition mean? I mean it's as I view it is capable of including a related accessory use may well be having homeless encampment but it may not be. I mean how do I know? Certainly but that does not go to any of the claims that have been pled here because the claim is that you by requiring a permit um you have just that simple requirement you have violated our right to free exercise. It is not that you denied us a permit and we were entitled to that permit and we were entitled to do this because it was a sincerely held religious relief. They were they they did exactly what they wanted to do. There was no no change in their behavior. The city said to them look this is not a prerequisite. We just need you to apply for the permit and and I think you stated it accurately. They said or at least council said we don't need to apply for a permit and we won't. Is that right? That is correct. That's what they said and the city said turning a parking lot into an outdoor dwelling for 100 vulnerable people um requires a temporary use permit. We're willing to waive the fee. We're willing to extend the length of time. We're willing to work with you. We're willing to try to come up with something that will work for everybody and um. Assuming that we do think that strict scrutiny should apply here should you survive anyway? Absolutely. This is this is not um putting them through years of of you know permitting review and it's a 30-day process at most um there are uh provisions set up for for review um and in fact that notice of violation is what triggers that like hey here we're giving this to you. You have 14 days if you want to challenge our interpretation. They don't um and then uh in in the church's briefing uh they say that well then it's you don't get to judicial review until you file a complaint under the Administrative Procedure Act and that's not the case uh that was in their reply brief. You would the procedure would be under Washington's Land Use Petition Act which has a an expedited schedule a 20-day 21-day um timeline to file. It's a it is set up to be as prompt as as possible um so we're not talking about a situation of you know would be could be maybe huh delay there was no delay this use happened and um there's no if there's no claim that is articulated that you interpreted your code wrong and that equals a prior restraint. The claim is simply requiring us to have a permit period uh and and that provision the temporary use permit provision is a prior restraint because we should not have to apply for a permit and what the courts have said is no it is not. Here's as a just a straightforward practical matter. What is at issue with respect to this permit? Sewage, access, safety, anything else? I believe that what the city said you know basic sanitation, fire hazard. That's what is at issue. The city says we want to make sure that it's safe, that it's sanitary. Bingo that's it as a practical matter that's what's at issue. I mean yeah we want to make sure that it's safe, that it's sanitary, that that um you know there aren't tripping hazards that that people that emergency vehicles can get in and out. All of the very basics of when you are housing a vulnerable population and again none of this has any any inquiry into what what the religious intent or purpose is underlying. I just quickly want to address the substantial burden discrimination um and unequal application cases um but first I want to mention that to get to the prior restraint there has to be um a uh a violation um to begin with. You know if it doesn't if it doesn't violate the the free exercise clause um we don't have to get to a substantial or excuse me we don't have to get to uh my words are escaping me right now uh to a prior restraint analysis um and and were we to as this court says then it then it must be tied to expressive conduct. Okay thank you your honors. Thank you counsel. Judge Fletcher I'd like to come back to the questions you asked about speculation and stuff um and applying. I just want to point out that in U.S. Supreme Court said in the Thornhill case a person who could have had the permit just for the asking still doesn't have to ask. Let me ask you you know I understand that let me ask you a practical question though. It seems to me with this many people on the parking lot for a sustained period we're going to need you are going to need some facility some accommodation for sewage for sanitary and so on correct? We had them. And is the city not able to require that you do so if you do not? They can well they never asked any questions about that they never had any problems about that. But then I'm asking you but doesn't as I understand the permitting process the process the permitting process is one that says are you making those arrangements? No it isn't and you have the facts have not been represented correctly to you today. There's not a single question on that application form about sanitation, electricity, liquor, public way access by roads. That's it we gave them all the information they asked for. We said do you want any more information they never asked for any more information. We had our own fire inspection we asked our own fire department a different city fire department to come in and inspect. Is there anything wrong with this? Is there anything we should do? We don't have any problem with any of that but their permitting their permit does not ask for any of that stuff doesn't and they also represented to you that they make a decision within 30 days. And that's not true and we pointed out in the reply brief that 30-day period says if you want permit you have to apply 30 days in advance of when you want to do this thing. It has nothing to do with issuing a SWIFT decision not a SWIFT administrative decision not a SWIFT judicial decision. It's not true that it says that is anything guaranteed within 30 days. And finally I really want to emphasize that this is an appeal from a 12b6 not an appeal from a summary judgment and I hear a lot of representations about the evidence says this and the evidence says that and you haven't shown this and you haven't shown that. We don't have to have evidence at this point. We do but we have to have plausible allegations at this point and we sure as heck do have those. And finally I point out that it's an unpublished decision but an unpublished decision of this court which is of persuasive value it's a Harbor missionary case. The Harbor missionary case had the district court erred by not granting a preliminary injunction. You have district courts like St. Timothy's in Brookings, Oregon relying on that. These cases hold that it's a denial of free exercise not to allow these people to serve the homeless food. Thank you. Thank you counsel this case is submitted.
judges: McKEOWN, FLETCHER, BUMATAY